## Yost *versus* Smith, Kline & Co.

1. A sheriff's sale of goods in separate lots and parcels is not fraudulent *per se*, or contrary to law or public policy.

2. Even if such a sale were irregular, a general creditor of the defendant in the execution has no standing to object thereto, in the absence of actual fraud.

3. In this case, goods, valued at about $1600, were sold in eleven parcels, varying in value from $10 to $250, with the consent of the plaintiffs and defendant in the execution, but contrary to the request of a general creditor of the defendant, who had commenced suit to recover his claim, to sell them at retail:

   *Held*, That the general creditor in the absence of circumstances involving actual fraud, had no standing to object to the validity of the sale, which passed a good title to the purchaser.

4. Klopp *v.* Witmoyer, 7 Wr., 219 ; Same *v.* Same, 7 Wr., 226, discussed.

March 12, 1884.　Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Northampton County:* Of January Term, 1884, No. 349.

This was a feigned issue under the Sheriff's Interpleader Act, wherein Mahlon Smith, Mahlon H. Kline and Washington I. Sellers, trading as Smith, Kline & Co., were plaintiffs, and M. L. Yost was defendant, to determine the ownership of certain chattels, which had been levied on by the sheriff on three successive writs of fi. fa., as the property of one John Shoffner, and sold by the sheriff, on the first two writs, to the plaintiffs, and on the third to the defendant.

On the trial, before MEYERS, P. J., the following facts appeared: Prior to the levies in question, the said chattels were the undisputed property of John Shoffner, against whom judgments had been entered by Smith, Kline & Co. on February 19, 1883, and by Elizabeth and Martha Shoffner on March 15, 1883.　Writs of fi. fa. issued on these judgments at the instance of the plaintiffs therein on March 15 and 16, 1883, by virtue of which the goods in question were sold to Smith, Kline & Co. for $1,590.　The value of these goods, as inventoried and appraised by the sheriff under the interpleader proceedings, was $1,585.80.　At the time of the sale, Yost was a general creditor of Shoffner, and had commenced an action to recover his debt, which action was then pending. Before the sale, he requested the sheriff to sell the goods at retail.　The sheriff then asked him whether he had a judgment or execution against Shoffner, and on his replying in the negative, the sheriff said: " Then you have nothing to say."

[Yost v. Smith & Co.]

The sheriff, by direction of his counsel, who was also counsel for Smith, Kline & Co., divided the goods into the following parcels and sold them for the following prices: The entire contents in cases, drawers and closets on the north side of the store for $250; the entire contents in bottles, cans, drawers and closets on the south side of the store, consisting of wines, whiskeys, medicines and drugs, for $250; the entire contents in bottles, cans and closets on the east side of the store, consisting of drugs, medicines, bottles, and cans, for $200; the entire contents in show case, in show windows, and on the counters, consisting of lamps, scales, perfumery, toilet articles, rubber and gutta percha goods, tobacco, pipes, hair, cloth and shaving brushes, cigars and garden seeds, for $250; the entire contents in bottles, shelves, and prescription case in office, consisting of drugs, medicines, chemicals, soda bottles, and rubber goods, for $250; the entire contents of cellar, consisting of wines, liquors, paints, oils, etc., for $250; four show cases, four counters, one book case and writing desk, for $100; one prescription case, for $10; all the shelves and fixtures in the store room, for $10; all the household furniture upon the premises, for $10; all the personal property not before mentioned, for $10.

A full opportunity to bid was afforded to all who were present at the sale, (about fifty persons;) for each of the above parcels the firm of Smith, Kline & Co. was the only bidder, and they were accordingly sold to them. The said division of the goods and the manner of their sale appeared to have been with the consent or subsequent assent of the respective plaintiffs in the writs of execution and of the defendant, John Shoffner. There was evidence of an arrangement between these persons that Smith, Kline & Co. should bid up the property to the amount of their judgment, if necessary, to protect themselves.

Subsequently, in April, 1884, Yost obtained a judgment against Shoffner, issued a fi. fa. thereon, and directed the sheriff to levy upon the above goods as the property of John Shoffner, claiming that the sale thereof to Smith, Kline & Co. was irregular and invalid. This levy having been made, and Smith, Kline & Co. having given notice to the sheriff of their claim of title by virtue of the prior sale, this feigned issue was directed as aforesaid.

The defendant presented the following point:

1.—The sale of the property of John N. Shoffner in the manner testified to by the sheriff and deputy in bulk, by directions of plaintiffs and defendant, and in spite of a notice of a creditor who had then begun an action on which he

[*Yost v.* Smith & Co.]

afterwards obtained judgment, to sell it at retail, was void in law, and no title passed to the purchaser.

Answer.—Refused.

The court instructed the jury that there was no evidence in the case of actual fraud on the part of the plaintiffs sufficient to go to a jury; that assuming that this sale was irregular, because it was made in parcels, yet as the defendant in the execution had assented thereto, it was valid and passed a good title to the goods to Smith, Kline & Co. He therefore directed them to render a verdict for the plaintiffs and against the defendants.

Verdict accordingly for the plaintiffs and judgment thereon. The defendant took this writ of error, assigning as error the answer to his point and the above instructions of the court.

*W. E. Doster* for the plaintiffs in error.—This case is ruled by Klopp *v.* Witmoyer, 7 Wr., 219, to which it is very similar. In that case the sheriff sold an entire stock of lumber and coal belonging to the defendants in the mass, by direction of the attorney of the plaintiff, to the plaintiff, whose bid was the only one made. The judgment in that case was confessed by a son to his father and the validity of the sale was questioned by a simple contract creditor who brought a suit after the sale was over. The court in that case say, that the creditor, holding neither an execution nor a judgment, could question the validity of the sale by showing that it was absolutely void either because the sale was fraudulent in fact or so conducted that the law pronounced it void. What was said of the sale in that case may be said of the sale in this, that the goods having been sold in lumps and in a manner that was calculated to decrease the number of bidders and deter competition, the sale was not merely "a gross irregularity" but a legal "nullity," which it was not in the power of any one, much less of a party to the fraud, to validate to the prejudice of a nonassenting creditor: McLeod *v.* Pearce, 2 Hawks, 110, (s. c., 11 Amer. Dec., 742); Blanton *v.* Morrow, 7 Ired., 47; Bevan *v.* Byrd, 3 Jones, 397; Gibbs *v.* Neely, 7 W., 305; Yocum *v.* Specht, 1 W. N. C., 6; Slingluff *v.* Eckel, 12 Harris, 472.

*Henry W. Scott* for the defendant in error.—This was not a lumping sale but one by parcels. Such sales are not irregular. The sheriff is not obliged to sell a stock of goods item by item but may sell in parcels, and this right is reognized by the very cases cited by counsel for plaintiff in error. But conceding that the sale was irregular, yet, in the absence of actual fraud, a sale acquiesced in and ratified by all those who have any right to object, and the property delivered to the

[Yost v. Smith & Co.]

purchaser, cannot be assailed months or years afterwards, and the property again levied upon in the hands of the purchaser, by one who had no lien at time of sale, upon the ground that it passed no title. By such a sale title would pass; it did pass in this case, however irregular the sale might be, the defendant ratifying the action of the sheriff.

Mr. Justice GORDON delivered the opinion of the court, March 31, 1884.

There is not, in this case, the slightest evidence of actual fraud, whether in fact or intention. We discover no impeachment of the regularity and rectitude of the judgment of Elizabeth and Martha Shoffner, upon which the goods in controversy were sold; the sale upon the fi. fa. was conducted in an orderly and legal manner, in the presence of a large number of people who had opportunity to bid had they seen fit so to do; the property, if we are to believe the sheriff's appraisement now before us, brought a full and fair price, and that it was struck off to Smith, Kline & Co., resulted from the fact that no one saw fit to outbid them. The only question then, of the slightest moment is the one regarding the manner in which the goods were sold. They were divided into eight or ten parcels and thus offered for sale to the persons then and there present. This arrangement was made by the sheriff under the direction of the counsel of the plaintiffs in the writ, and with the assent of the defendant.

It is now alleged that this was a sale of the goods in mass, and per se fraudulent as to general creditors. In support of this proposition the case of Klopp v. Witmoyer & Arentz, 7 Wr., 219, is cited. We can assent neither to the allegation thus made, nor to the application of the case cited. This was not a sale of the goods in mass, but in separate lots or parcels, and such a sale is forbidden by no Act of Assembly or policy of law, and this especially when it is so made by direction of the plaintiffs in the writs and the defendant. How, under such circumstances, or any others not involving fraud, a general creditor can be affected we cannot understand. What if these goods had sold for three times the amount for which they did sell? Yost was in no position to claim the money. As the sheriff well said to him, he, not having an execution, was in no position to direct how the sale should be conducted. After satisfying the executions then in the officer's hands, the balance of the money must have gone to Shoffner, the defendant. There were, therefore, none interested in the manner and mode of sale but those who assented to it, hence there are none left who can be heard to complain. Neither does the case cited support the contention of the plaintiff in error, but

the contrary. That case appears twice in the same book: (7 Wr., 219–226). In the first, the sale was held to be void, because an entire stock of coal and lumber was sold in mass. When it came up again, after the second trial, the sale though in mass, was held to be good, and this for the reason that it was proved that the defendant had assented to it. The reasoning which supports this ruling is concise and clear. The sale, as it appeared in the first case, was held void because it had neither the sanction of law nor of the owner of the goods ; in the second case it was held good because made under authority from the owner. The obvious character of this reasoning will be apparent when we reflect that a bonâ fide sale of the goods to a creditor in satisfaction of his claim would, on all authority, have been good, and surely that there was a public instead of a private sale to the creditor can make no difference. Applying this same reasoning to the case in hand, and the contention of the plaintiff in error will be found to be baseless. The debtor might lawfully have transferred the goods in controversy to the Shoffner sisters or to Smith, Kline & Co. in satisfaction, in whole or in part of their claim. To a transaction of this kind, if made in good faith, other creditors could not object, and it is impossible to comprehend how it can be that a public sale of the same character and with the same lawful intent, can be regarded as fraudulent per se, or how it can be effectively used even as evidence of fraud.

The judgment is affirmed.